**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **8:09CR325** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **FINDINGS AND** |
| | ) | |
| **JULIE WIESE,** | ) | **RECOMMENDATION** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on the motion to suppress filed by defendant Julie Wiese (Wiese) (Filing No. 13). Wiese is charged in the Indictment with controlling a residence for the purpose of manufacturing, storing, and distributing methamphetamine and marijuana in violation of 21 U.S.C. § 856(a)(2). Wiese seeks to suppress evidence seized from 824 Avenue B, Kearney, Nebraska, on December 7, 2008, and any statements she may have made to law enforcement officers on December 7 and 8, 2008.

This is a companion case to **United States v. Robert W. Carlson**, 8:09CR307 (D. Neb.), wherein Carlson is charged in an Indictment with a conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and with the possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Carlson filed motions to suppress evidence seized at a traffic stop of his vehicle on December 7, 2008, and evidence seized on December 8, 2008, at a residence he shared with Wiese at 824 Avenue B, Kearney, Nebraska. An evidentiary hearing was held on November 19, 2009, on Carlson's motion to suppress the evidence obtained at the traffic stop, and the balance of the evidentiary hearing was scheduled for November 30, 2009, such hearing to be consolidated with the hearing on Wiese's motion to suppress since both such motions relate to the search of the premises at 824 Avenue B, Kearney, Nebraska, on December 8, 2008.

The consolidated evidentiary hearing was held on Wiese's and Carlson's motions to suppress on November 30, 2009. Wiese was present for the hearings along with her counsel, Adam J. Sipple. Carlson was present with his attorney Richard Calkins. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. During the

consolidated hearing, the court heard the testimony of Trooper Paul Hazard (Trooper Hazard) with the Nebraska State Patrol (NSP), Officer Jason L. Fuller (Officer Fuller) with the Kearney Police Department (KPD), and Julie Wiese Carlson[1]. The court also received into evidence a DVD of Wiese's interview (Exhibit 1), a copy of an Advice of Rights Form (Exhibit 2), and ten photographs of the interior of the Wiese residence (Exhibits 101 - 110). A transcript (TR.) was prepared and filed on December 9, 2009 (Filing No. 27).

## FINDINGS OF FACT

Robert Carlson was arrested on drug charges in the late evening of December 7, 2008, by Trooper Hazard following a traffic stop (TR. 5). Trooper Hazard, having received information that Carlson was trafficking in methamphetamine from a residence he shared with Wiese at 824 Avenue B in Kearney, Nebraska, wanted to obtain a consent to search the premises (TR. 8). Trooper Hazard, in uniform with sidearm, met Officer Fuller, also in uniform with sidearm, and they proceeded in their separate patrol vehicles to 824 Avenue B (TR. 7). Upon arrival shortly after midnight, both officers parked in the street and walked to the front door of 824 Avenue B (TR. 9). The officers observed a light on in the residence which emanated from a television set (TR. 9). Trooper Hazard knocked on the door which was answered by Wiese (TR. 9). Trooper Hazard idenified himself and asked if the officers could speak with her (TR. 9). Wiese agreed to talk with the officers and allowed the officers to enter the residence after they asked if they could step inside because of the cold weather outside (TR. 9). When the officers stepped into the residence, Trooper Hazard told Wiese that Carlson had been arrested for possession of a large amount of methamphetamine (TR. 9-10). Wiese stated she thought he (Carlson) was done using methamphetamine (TR. 10). Trooper Hazard told Wiese that he had information that there was possible criminal activity going on at the residence (TR. 10). Trooper Hazard asked Wiese if Carlson lived at the residence and for how long (TR. 10). Wiese told Trooper Hazard that Carlson had been living there for about nine years (TR. 10). When asked whose house it was, Wiese stated she owned the house and had full

[1] Defendant Julie Wiese married defendant Robert Carlson after December 2008 and now uses the name of Julie Carlson (TR. 60).

control of the house (TR. 10-11).   Trooper Hazard asked if there were any narcotics in the house to include drug paraphernalia, methamphetamine, marijuana, or anything of that nature (TR. 11).   Wiese stated that if there were such items, they would be in the "man cave" (TR. 11).   When asked where the "man cave" was, Wiese said it was in the basement (TR. 11).   When asked when she goes to the basement, Wiese stated she goes downstairs for the computer, to get things out of the deep freezer, to get cat food, to use the washer and dryer, and to visit with Carlson when he is there (TR. 12).   Wiese claimed full access to the basement area (TR. 12).

When asked by Trooper Hazard whether he could have permission to look around the residence, Wiese stated "yes" (TR. 12; 50).   Wiese was asked if the officers could search the residence and Wiese said "yes, absolutely." (TR. 12).   The officers looked around the main level of the house and then asked to go into the basement (TR. 14).   Wiese took the officers around a corner to the basement stairs and led the officers down the basement (TR. 14).   The main area had a couch, several chairs, a computer desk, some stereo equipment, and a small desk (TR. 14-15).   In an alcove area, a sheet hung down covering up a washer/dryer, a freezer, and bags of cat food (TR. 15).   As the officers came into the basement, they observed drug paraphernalia on the desk consisting of a methamphetamine pipe and several zip-lock bags with a powdery residue in them (TR. 16).   The officers also noted an odor of burnt marijuana (TR. 16).   When asked if there were any other narcotics she was aware of, Wiese opened some of the desk drawers and pointed out such materials (TR. 17; 52).   The officers saw a metal container in the overhead open rafters and asked Wiese if they could remove it from the ceiling and search it (TR. 16).   Wiese said "yes," and Trooper Hazard removed the tin container and Wiese opened the tin for the officers (TR. 18-19; 52).   Inside the tin container were methamphetamine paraphernalia, suspected drug ledger records, and some traces of methamphetamine in plastic bags (TR. 19).   After spending approximately thirty minutes in the residence, the officers left with the contraband they had found (TR. 20).

Later on December 8, 2007, around 5 p.m., Trooper Hazard called Wiese and asked her to come to the NSP office in Kearney (TR. 21).   There, Wiese was advised of her *Miranda* rights by Trooper Hazard by having her read and initial an Advice of Rights Form

(Exhibit 2).  The entire interview session was recorded (Exhibit 1).  At the conclusion of the interview, Wiese was arrested (TR. 24-25).

Ms. Carlson testified she has worked for the Nebraska Department of Roads for 23-25 years (TR. 60).  Ms. Carlson testified she often receives telephone calls from the NSP because of road accidents or road conditions (TR. 62).  In the late evening of December 7-8, 2008, she received a call from the NSP asking if she were home (TR. 63).  A short time later, Ms. Carlson testified Trooper Hazard and two city officers came to her door and she let them in (TR. 64).  Ms. Carlson testified the officers told them Robert Carlson had been arrested on methamphetamine charges and asked whether he lived there (TR. 65).  Ms. Carlson testified the officers wanted to know where Robert Carlson smoked and she told them he used the basement (TR. 66).  Ms. Carlson testified the officers wanted her to show them the basement area and she complied (TR. 66).  Ms. Carlson testified she did not give the officers permission to search and only assisted the officers because they requested her to do so (TR. 66).

The testimony of Trooper Hazard and Officer Fuller were consistent with each other and, to the extent such testimony was inconsistent with Ms. Carlson, the court credits the testimony of Trooper Hazard and Officer Fuller.  The court takes into account the demeanor of the witnesses, the reasonableness of their testimony, and the extent to which their testimony is consistent with other facts the court believes.

## LEGAL ANALYSIS

### A.  Search of the Residence

Wiese contends the search of her residence in the early morning hours of December 8, 2008, was unlawful.  The government counters that Wiese consented to any search of the residence.  The court finds Wiese consented to the search of the residence.

A consent search must be voluntary.  The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances."  *Ohio v. Robinette*, 519 U.S. 33, 40 (1996).  Some personal characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an

individual was read his *Miranda* rights, and whether an individual had experienced prior arrests.  **See** *United States v. Comstock*, 531 F.3d 667, 676-77 (8th Cir. 2008) (listing factors).  A court may also look at environmental factors including, the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent occurred in a public or secluded place; and whether the individual objected or stood by silently while the search occurred.  *Id.* (**citing** *United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007)).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.  This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."  *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (footnotes omitted).  "In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so."  *United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008).  The government bears the burden of proving voluntary consent to search by a preponderance of evidence.  *United States v. Esquivel*, 507 F.3d 1154, 1159-60 (8th Cir. 2007).

In the present case, I find no evidence suggesting Wiese was threatened, intimidated, or promised anything in return for giving consent to search the residence.  Not only did Wiese consent to the search, she assisted Trooper Hazard and Officer Fuller in the search of the residence, desks, and containers.  No search warrant was necessary as Wiese voluntarily consented to the searches in question.

## B.  Wiese's Statements

Wiese also seeks to suppress her statements provided to law enforcement officers at the residence and later at the NSP office.   At the time of the search of the residence on December 8, 2008, Wiese was not in custody, nor was she arrested when the officers left the residence.  Wiese appeared at the NSP on her own after she was asked to come to

the NSP office in Kearney.  Wiese claims her statements were involuntary under applicable law.

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936).  The court must look to the totality of circumstances in determining whether or not the statements were voluntary.  *Mincey v. Arizona*, 437 U.S. 385 (1978); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  In this case, Wiese was advised of her constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  There is no evidence Wiese did not understand the advice of rights.  Even though Wiese was advised of her *Miranda* rights, the court must examine the conduct of the law enforcement officials to determine whether or not there was an overreaching by law enforcement officials amounting to coercive police activity.  Coercive police conduct will render a confession inadmissible.  *Blackburn v. Alabama*, 361 U.S. 199 (1960).  In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or her will was overborne.  *United States v. Wilson*, 787 F.2d 375, 380-81 (8th Cir. 1986).  The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused.  *Schneckloth*, 412 U.S. at 225-26.  Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights.  *Connelly*, 479 U.S. at 167.  However, any police questioning has coercive aspects to it simply by reason of the confrontation.  The police officer is part of the law enforcement system that will cause a charge to be made against a suspect.  The questioning by a police officer, while uncomfortable, is not coercive *per se*.  **See** *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

One of the principal factors is whether or not the defendant was in custody at the time of the statements.  "A *Miranda* warning must precede any custodial interrogation.  A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1999) (**citing** *Miranda v. Arizona*, 384 U.S. 436 (1966)).  "Custody occurs either upon formal arrest or

6

under any other circumstances where the suspect is deprived of his freedom in any significant way." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thatsaphone v. Weber*, 137 F.3d 1041, 1044 (8th Cir. 1998) (**citing** *Stansbury v. California*, 511 U.S. 318, 322 (1994)). The definition of questioning includes, "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the [defendant]." *United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998) (**citing** *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). The safeguards of *Miranda* do not come into play until a person's freedom of action is curtailed to a "degree associated with formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). The mere fact that a person is the focus of a criminal investigation does not trigger the requirements of a *Miranda* advice by the interrogating officer. *Minnesota v. Murphy*, 465 U.S. 420, 431 (1984). Furthermore, "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); **see also** *Pennsylvania v. Bruder*, 488 U.S. 9, 11 n.2 (1988); *United States v. Streifel*, 781 F.2d 953, 959 (1st Cir. 1986). The court has considered the relevant factors to be considered in determining whether or not a suspect is in custody for the purposes of *Miranda* warnings as set forth by the Eighth Circuit in *United States v. Griffin*, 922 F.2d 1343, 1348-52 (8th Cir. 1990), and finds Wiese was not in custody at any time when the officers were at her residence on December 8, 2008.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Wiese's motion to suppress (Filing No. 13) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendations.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of January 2010.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.